# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-532


**IBERIA GENERAL HOSPITAL, ET AL.**

**VERSUS**

**ST. MARY SUGAR COOPERATIVE, INC., ET AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 15-02994
ANTHONY PAUL PALERMO, WORKERS' COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***

**JOHN E. CONERY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Marc T. Amy, Elizabeth A. Pickett, and John E. Conery, Judges.


**AFFIRMED.**

**Denis Juge**
**Christopher Whelen**
**Juge, Napolitano, Guilbeau, Ruli and Frieman**
**3320 West Esplanade Avenue, North**
**Metairie, Louisiana 70002**
**(504) 831-7270**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **LUBA Casualty Ins. Co.**
    **St. Mary Sugar Cooperative, Inc.**

**Lawrence C. Billeaud**
**Attorney at Law**
**706 West University Avenue**
**Lafayette, Louisiana 70506**
**(337) 266-2055**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Iberia General Hospital**
    **Iberia General Hospital & Medical Center**

**CONERY, Judge.**

This is a workers' compensation case involving a billing dispute between Iberia General Hospital & Medical Center (Iberia General) and St. Mary Sugar Cooperative Inc. (St. Mary) and its workers' compensation insurer, Louisiana United Business SIF (LUBA).[1] The Workers' Compensation Judge (WCJ) found in favor of Iberia General and awarded damages, penalties, and attorney fees against LUBA. By virtue of his ruling in favor of Iberia General, the WCJ, in effect, also denied LUBA's reconventional demand for overpayment, and there was no appeal from the denial of the reconventional demand. For the following reasons, we affirm.

## PROCEDURAL HISTORY AND FACTS

The facts of this case are simple and undisputed. St. Mary's employee, Omar Martinez, suffered an on-the-job injury to his finger which required a surgical procedure. LUBA approved the surgery for Mr. Martinez. It was scheduled at the New Iberia Surgery Center (Surgery Center), which is partially owned by Iberia General. Ms. Amy Gaudet, Director of Revenue Cycle at Iberia General, testified that it was routine for patients at the Surgery Center to have their outpatient pre-operative lab work performed at Iberia General.

Iberia General received an "order to perform outpatient services" on Mr. Martinez prior to his scheduled surgery. On January 2, 2014, Mr. Martinez received the required laboratory services at Iberia General. On February 6, 2014, Iberia General submitted a bill for the laboratory services required for Mr.

---

[1] LUBA is designated in the litigation as LUBA Casualty Insurance Company. However, the February 16, 2016 judgment identifies LUBA as Louisiana United Business SIF.

Martinez to undergo the finger surgery authorized by LUBA on the UB-04 Medical Claim Form.

The initial Iberia General bill listed the following pertinent codes, description of services, and the amount due for each of the outpatient pre-operative services provided for Mr. Martinez on January 2, 2014, (1) CODE 0300 LABORATORY (LAB) 36415 - $16.50; (2) CODE 0301 LAB/CHEMISTRY 80053 - $244.00; (3) CODE 0305 LAB/HEMOTOLOGY 85027 - $81.00; (4) CODE 0305 LAB/HEMOTOLOGY 85610 - $63.00.

In accordance with its February 6, 2014 submission of the UB-04 Medical Claim Form to LUBA for services rendered, Iberia General, as a hospital facility, expected to receive payment for $404.50, less ten percent, for a total of $364.05, pursuant to La.Admin. Code Tit. 40, pt. I, § 2507 promulgated in conjunction with La.R.S. 23:1034.2. The identical bill was submitted by Iberia General on February 11, 2014, and again on March 26, 2014.

In response to Iberia General's bills for Mr. Martinez's outpatient pre-operative procedures (blood tests), LUBA responded by paying $163.60. The March 20, 2014 Explanation of Medical Benefits (EOMB) stated for Codes 300 and 301, "Note:  BILLED CODE IS BEING REIMBURSED ACCORDING TO THE BY REPORT RULES PER LAC TITLE 40, CH 51, 5125.C[.]"  The EOMB stated for Codes 305 and 305, "Note: THIS SERVICE OR ITEM IS REPRICED ACCORDING TO THE LOUISIANA FACILITY FEE SCHEDULE."  However, the EOMB also reflected under the heading "Type of Service: HO HOSPITAL OTHER – OUTPATIENT[.]"  After receiving the EOMB from LUBA, Iberia General did not receive any further explanation from LUBA of why it failed to pay

the requested amount of $364.05, and only paid the reduced amount of $163.60 for the services rendered to Mr. Martinez.

On May 11, 2015, Iberia General filed a Disputed Claim for Compensation with the Office of Workers' Compensation, commonly referred to as a Form 1008, pursuant to La.R.S. 23:1034.2(F)(1) against St. Mary and LUBA for "**Improper and/or late payment of medical bills (please see attached EOBs); penalties and attorney fees for arbitrary and capricious handling of this claim.**" *See* La.R.S. 23:1201.

### *St. Mary's and LUBA's Answer and Reconventional Demand*

St. Mary and LUBA filed an answer to the claim by Iberia General and denied that any additional reimbursement was owed to Iberia General for the outpatient lab services provided to Mr. Martinez. St. Mary and LUBA subsequently also filed a reconventional demand seeking the reimbursement of more than $110.35 they alleged was an overpayment to Iberia General.

### *Trial on the Merits*

A trial on the merits was held on October 20, 2015, before the WCJ. Iberia General called one witness, Ms. Gaudet, the supervisor in charge of billing at Iberia General. She identified the two exhibits submitted into the record by the claimant. First, Exhibit A, the February 6, 2014 bill on a UB-04 Medical Claim Form from Iberia General to LUBA and second, Exhibit B, the EOMB from LUBA paying only $163.60, and disallowing the additional amount of $200.45 billed for the outpatient lab services rendered to Mr. Martinez. Ms. Gaudet further verified that the EOMB sent by LUBA clearly identified the services rendered to Mr. Martinez as **outpatient services**.

Ms. Gaudet also testified that under the regulations of workers' compensation billing, Iberia General was classified as a hospital and was required to use the UB-04 Medical Claim Form when billing for its services and not the HCFA 1500 Form, as provided in La.Admin. Code Tit. 40, pt. I, § 5111. When questioned why hospitals were treated differently from stand-alone laboratories that bill on the 1500 Form, she replied, "It would just be an assumption that our overhead is a lot higher than a stand-alone laboratory . . . those providers that bill on a 1500."

Ms. Gaudet was questioned about how bills not fully paid in the past had been handled by Iberia General. She responded that excerpts were sent from the statutes stating that, "(A), hospital outpatient claims are to be billed on a UB-04; and (B), that the hospital outpatient claims are to be reimbursed at ninety percent of charges."

Under cross-examination by counsel for St. Mary and LUBA, Ms. Gaudet was questioned about the "listing of CPT codes with corresponding reimbursement rates that applies to bills billed on a HCFA 1500 form for providers except dentists, pharmacists[,] and hospitals." She was specifically asked, "And would you happen to actually know what the Fee Schedule allows for the CPT code 36415?" To which Ms. Gaudet answered, "I do not because we don't get reimbursed by those codes." Ms. Gaudet further responded to counsel's question about the designation "by report" for some CPT codes, to which she replied that she had seen that table before, "but again, we don't--I don't know what's on the table because it's not the way that we get reimbursed typically."

Ms. Gaudet testified on re-direct examination that Iberia General had received proper payment from LUBA for treatment of injured workers in other

4

cases and that as a general rule, LUBA was not one of the carriers that had caused problems with billing issues in the past.

The record reflects that prior to the trial, St. Mary and LUBA attempted to submit into evidence the transcript of the deposition of John Kocke, RN, as a "bill review expert." The WCJ denied the request and allowed the deposition to be proffered as "Proffer D-1[.]" St. Mary and LUBA did not offer any other exhibits in opposition to Iberia General's claim, and have not assigned as an error on appeal the trial court's exclusion of Mr. Kocke's deposition.

After the close of all testimony and argument of counsel, the WCJ took the matter under advisement, and on November 12, 2015, issued oral reasons on the record. A judgment was signed on February 16, 2016, in favor of Iberia General and ordered St. Mary and LUBA to pay the underpayment of the Iberia General bill in the amount of $200.45, $2,000.00 in penalties, and $3,000.00 in attorney fees. The reconventional demand filed by St. Mary and LUBA was denied. From this judgment, St. Mary and LUBA now appeal.

## ASSIGNMENT OF ERRORS

On appeal, St. Mary and LUBA allege the following as errors made by the trial court in its ruling:

> **Assignment No. 1:** The trial court erred by applying the Fee Schedule's outpatient reimbursement rules to a bill for laboratory work rather than using the specific reimbursement amounts set out by the Fee Schedule for these services.

> **Assignment No. 2:** The trial court erred when it awarded a penalty and attorney fee to Iberia.

## LAW AND DISCUSSION

### *Standard of Review*

"In general, an appellate court is to review factual findings issued in

workers' compensation matters according to the manifest error-clearly wrong standard[.]" *Miller v. Blacktype Farms*, 06-1202, p. 4 (La.App. 3 Cir. 3/7/07), 952 So.2d 867, 870. *Miller* further instructed:

> However, when there are errors of law asserted on appeal, the appellate court must make a determination whether the workers' compensation judge's ruling was legally correct.
>
> . . . .
>
> It is well settled that reviewing courts will defer to a reasonable decision of the WCJ on a matter or question properly within its discretion. However, if the WCJ's decision is based on an erroneous interpretation or application of law rather than a valid use of discretion, the incorrect decision is not entitled to deference.

*Id*. at 870-72 (citations omitted). Moreover, "[i]f the review on appeal reveals a reversible error of law, a *de novo* review of the record must be conducted." *Perry v. Perry & Sons Vault & Grave Serv.*, 03-1519, p. 3 (La.App. 3 Cir. 5/12/04), 872 So.2d 611, 614.

*Assignment of Error One- Billing and Payment of Medical Expenses*

In a situation where an employee is injured on the job, his employer's obligation to provide medical expenses is governed by La.R.S. 23:1203. Louisiana Revised Statutes 23:1203(A) states in pertinent part, "the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal[.]"

Nevertheless, the employer's obligations to the injured worker are limited in La.R.S. 23:1203(B), which states in pertinent part:

> The obligation of the employer to furnish such care, services, treatment, drugs, and supplies, whether in state or out of state, is limited to the reimbursement determined to be the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies, as determined under the reimbursement schedule annually

6

published pursuant to [La.]R.S. 23:1034.2 or the actual charge made for the service, whichever is less.

Louisiana Revised Statutes 23:1034.2(A) instructs the director of the office of workers' compensation administration to establish "a reimbursement schedule for drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal and due under the Workers' Compensation Act[,]" along with the rules and regulations governing the implementation of the schedule.

This case involves a billing dispute, therefore, La.R.S. 23:1034.2(F)(1) governs and provides the proper procedure for its resolution:

> Should a dispute arise between a health care provider and the employee, employer, or workers' compensation insurer, either party may submit the dispute to the office in the same manner and subject to the same procedures as established for dispute resolution of claims for workers' compensation benefits.

In accordance with the statute, Iberia General filed a Form 1008 Disputed Claim for Compensation with the Office of Workers' Compensation.

### *Application of the Medical Treatment Guidelines to Iberia General*

St. Mary and LUBA argue that because Iberia General is a hospital facility, it should be subject to the Medical Treatment Guidelines, Maximum Reimbursement Allowances contained in La.Admin. Code Tit. 40, pt. I, § 5157. This conclusion is based on the mandate in La.Admin. Code Tit. 40, pt. I, § 5101(A), which provides, "It is the intent of this reimbursement schedule to limit to the mean of the usual and customary charge all fees for medical services, supplies, and other non-medical services delivered to workers' compensation claimants, as authorized by law."

7

St. Mary and LUBA also rely on the language of La.Admin. Code Tit. 40, pt. I, § 5103(A) in support of their argument that Iberia General, as a hospital facility, should be subject to the Medial Reimbursement Schedule. Louisiana Administrative Code Title 40, Part I, § 5103(A) (emphasis added) provides:

> This document is primarily intended to facilitate the establishment of the maximum allowable reimbursement for all physician, chiropractic, physical and occupational therapy, pharmacy, **hospital**, vision care, Hearing Aid Equipment, Nursing/Attendant Care & Home Health, Home & Vehicle Modification, Medical Transportation, Durable Medical Equipment, Prosthetic & Orthopedic Equipment, Respiratory, Miscellaneous Claimant Expenses, Vocational Rehabilitation and Dental Care Services.

The WCJ found in favor of Iberia General and stated the following oral reasons on the record on November 12, 2015:

> A quick perusal of the reimbursement schedule and the statutes pertaining in this case [shows that] it's very apparent that there are specific CPT codes for these services that were provided, however, the services were provided as out-patient services by Iberia General Hospital. While I do think that it leads to a certain illogical conclusion, after a review of the matter it is patent that the services were provided as an out-patient at a hospital. Therefore, the hospital is entitled to reimbursement at 90 percent of the billed charges. Therefore, payment should've been made in the amount of Three Hundred and Sixty-four Dollars and Five Cents. The insurer paid a Hundred and Sixty-three Dollars and Sixty Cents. Therefore, Iberia General is entitled to the difference between the actual payment and the 90 percent that was owed. This amount is Two Hundred Dollars and Forty-five Cents. Therefore, the Court awards Two Hundred Dollars and Forty-five Cents to Iberia General in payment of the billed charges.

In its reasons for ruling in favor of Iberia General, the WCJ relied on La.Admin. Code Tit. 40, pt. I, § 2507, which provides the medical guidelines for hospital reimbursements under the workers' compensation statutes for outpatient hospital medical services. Louisiana Administrative Code Title 40, Part I, § 2507 provides:

8

Outpatient hospital and ambulatory surgery services will be reimbursed at covered charges less a ten percent (10%) discount. The formula for calculating payment amount is:

(BILLED CHARGES) - (NONCOVERED CHARGES) =
COVERED CHARGES x .90 = PAYMENT AMOUNT

If a patient is admitted as an outpatient, however; is in the hospital overnight, this will be considered outpatient services. When patient is in hospital by midnight census of day two, this becomes an inpatient admission, thus services are paid at per diem rate.

In addition, all procedures which can safely be performed as outpatient procedures shall be reimbursed as such. (Reference the utilization Review Rules, Chapter 27).

For a hospital admission to be subject to inpatient reimbursement, it must be medically necessary and not solely for the convenience of the payor.

The WCJ correctly found that it was "patent that the services were provided as an out-patient at a hospital." Louisiana Administrative Code Title 40, Part I, § 2507 makes no distinction concerning the type of medical services that qualify for the ninety percent reimbursement, only that the workers' compensation employee is an outpatient. In this case, Iberia General received an "order to perform outpatient services" on Mr. Martinez prior to his scheduled surgery. Moreover, LUBA's own March 20, 2014 EMOB designated the procedures performed on Mr. Martinez as, "Type of Service: "HO HOSPITAL OTHER – OUTPATIENT[.]"

Thus, the workers' compensation procedures for billing required that Iberia General bill the outpatient pre-operative procedures performed for Mr. Martinez prior to his approved surgery as an outpatient on a UB-04 Form, as confirmed by Ms. Gaudet in her testimony at trial.

This issue has been addressed in the context of an ambulatory surgery center, which is coupled with outpatient services at a hospital in La.Admin. Code

9

Tit. 40, pt. I, § 2507. In *First Choice Surgery Center v. Fresh Pickin's Market, Inc.*, 11-1918, p. 7 (La.App. 1 Cir. 5/17/12), 102 So.3d 795, 799, *writ denied*, 12-2456 (La. 1/11/13), 107 So.3d 618, the first circuit found that "[t]he director of the office of workers' compensation administration has not established a reimbursement schedule for the specific procedures at issue in this case. However, since First Choice is an ambulatory surgical center, the formula set forth in [La.Admin. Code Tit. 40, pt. I, § 2507] applies to its charges."

The provisions of the Louisiana Administrative Code Tile 40, Part 1, § 2507 are also applicable to the case at issue as they continue to be the law, as provided in the "Credits" which state, "Current with amendments included in the Louisiana Register, Volume 42, Number 9, dated September 20, 2016." Therefore, we find the WCJ correctly found that La.Admin. Code Tit. 40, pt. I, § 2507 was applicable to Iberia General's bill to LUBA for the outpatient pre-operative services rendered to Mr. Martinez.

***Reasonableness of the Iberia General Charges for Outpatient Pre-Operative Services***

In *First Choice*, 102 So.2d at 799, where there was no applicable reimbursement schedule, the panel discussed the analysis applicable in the absence of a reimbursement schedule and stated:

> In the absence of a reimbursement schedule, the starting point for an award of medical expenses is the actual charge. *Manuel v. River Parish Disposal, Inc.*, 96-302, 96-303 (La.App. 5[] Cir. 10/1/96), 683 So.2d 791, 795. However, implicit in the above provisions is a requirement that the charges be reasonable. *See Manuel*, 683 So.2d at 795. The reasonableness of a particular medical fee depends on what is customary in a community for similar operations involving similar pre-operative and post-operative procedures and complications. *Adler v. Hospital Service Association of New Orleans*, 278 So.2d 177, 180 (La.App. 4[] Cir. 1973).

Ms. Gaudet testified at trial that she had conducted a comparison of the charges in the Iberia General bill to LUBA with the charges made for the identical codes at two other hospitals in the area. Those hospitals included Dauterive Hospital in New Iberia, Louisiana and Lafayette Regional Medical Center in Lafayette, Louisiana. Ms. Gaudet testified that the charges from Iberia General for the outpatient pre-operative services rendered to Mr. Martinez "were significantly lower than both of those entities."

Based on the testimony of Ms. Gaudet, we also find support in the record on appeal that the charges submitted to St. Mary and LUBA met the "reasonableness" standard for "what is customary in a community for similar operations involving similar pre-operative and post-operative procedures." *Adler v. Hospital Service Association of New Orleans*, 278 So.2d 177, 180 (La.App. 4 Cir. 1973).

For the foregoing reasons, we find that St. Mary and LUBA's first assignment of error is without merit and affirm the WCJ's judgment ordering St. Mary and LUBA to pay Iberia General damages in the amount of $200.45 for the underpayment of the bill for the outpatient pre-operative services rendered to Mr. Martinez.

***Assignment of Error Two – Award of Attorney Fees and Penalties'***

In their second assignment of error, St. Mary and LUBA challenge the WCJ's judgment assessing penalties in the amount of $2,000.00 and award of attorney fees of $3,000.00 for their underpayment of Iberia General's bill for Mr. Martinez's outpatient pre-operative medical services.

The WCJ stated in its November 12, 2015 reasons for ruling:

> The next question is whether the underpayment of medical bills leads to the imposition of penalties and attorney fees. It is clear from the outset that this matter was disputed, that there was a difference of

11

opinion between the parties as to how the matter should be billed and how it should be paid. We're -- in this instance we're not dealing with uneducated parties. We're dealing with sophisticated business enterprises and therefore, this Court finds that the imposition of penalties and attorney fees is appropriate. The Court awards Two Thousand Dollars in penalties to Iberia General. The Court has reviewed the work done by the attorney and has considered the experience of the attorney, the work that was done, the recovery that was obtained and determines that a reasonable attorney fee in this matter is Three Thousand Dollars.

In the recent case of *Lafayette Bone & Joint Clinic v. Louisiana United Business SIF*, 15-2137, p. 10-11 (La. 6/29/16), 194 So.3d 1112, 1120-21, the supreme court affirmed the appellate court's award of penalties and attorney fees under La.R.S. 23:1201(F)(4) and provided the analysis for the determination of same. The Louisiana Supreme Court stated:

> [U]nder [La.R.S.] 23:1201(F)(4) ("[F]ailure to provide payment in accordance with this Section . . . shall result in the assessment of a penalty . . . together with reasonable attorney fees for each disputed claim. . . . Penalties shall be assessed in the following manner: . . . (4) In the event that the health care provider prevails on a claim for payment of his fee, penalties as provided in this Section and reasonable attorney fees based upon actual hours worked may be awarded and paid directly to the health care provider. . . .").

> Because one purpose of the workers' compensation law is to promptly provide compensation and medical benefits to an employee who has suffered injury within the course and scope of employment, a failure to timely provide payment can result in the imposition of penalties and attorney fees except when the claim is reasonably controverted. *See Authement v. Shappert Engineering*, 02-1631, p. 8 (La.2/25/03), 840 So.2d 1181, 1186-87. *See also* [La.R.S.] 23:1203(F)(2) ("This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control."). The crucial inquiry in determining whether to impose penalties and attorney fees is whether the payor had an articulable and objective reason to deny payment at the time it took action. *See Authement v. Shappert Engineering*, 02-1631 at p. 11, 840 So.2d at 1188.

Based on our review of the record, we affirm the WCJ's judgment awarding penalties and attorney fees to Iberia General for St. Mary and LUBA's underpayment of the bill for the outpatient pre-operative services rendered to Mr. Martinez. St. Mary and LUBA offered no opposition to the exhibits and testimony offered by Iberia General. The WCJ stated in oral reasons, "We're -- in this instance we're not dealing with uneducated parties. We're dealing with sophisticated business enterprises[.]" The statutory construction of the workers' compensation provisions provide for the payment of medical services rendered to injured workers. The statutory provisions cited by Iberia General, coupled with the testimony offered by its witness, Ms. Gaudet, reflect that LUBA and Iberia General had a billing relationship which had not been a problem in past transactions. Therefore, we affirm the WCJ's imposition of penalties and attorney fees against St. Mary and LUBA who failed to demonstrate an "articulable and objective reason to deny payment at the time it took action." *Id*. at 1121.

### *Attorney Fees on Appeal*

Iberia General seeks an additional award of attorney fees for work done on appeal. In the case of *Central La. Ambulatory Surgical Center v. McDonald's of Pineville*, 09-0823, p. 1 (La.App. 3 Cir. 2/3/10), 29 So.3d 734, a panel of this court stated, "A plaintiff who successfully defends a judgment on appeal is entitled to additional attorney fees upon request." *See also Lafayette Bone*, 194 So.3d 1112. Iberia General was successful in defending the judgment in its favor on appeal. Accordingly, we award Iberia General $2,000 in attorney fees for work performed on appeal. We note that the parties did not request oral argument in this case.

**CONCLUSION**

For the foregoing reasons, we affirm in its entirety the February 16, 2016 judgment of the Workers' Compensation Judge awarding damages in the amount of $200.05, penalties in the amount of $2,000.00, and attorney fees in the amount of $3,000.00 in favor of Iberia General Hospital & Medical Center, and against St. Mary Sugar Cooperative Inc., and Louisiana United Business SIF.

We also award Iberia General Hospital & Medical Center attorney fees in the amount of $2,000.00 for work done on appeal. All costs of this appeal are assessed to St. Mary Sugar Cooperative Inc., and Louisiana United Business SIF.

**AFFIRMED.**